Robert J.A. Zito (RZ 6990)
SCHIFF HARDIN LLP
623 Fifth Avenue
New York, N.Y. 10022
T: (212) 753-5000
F: (212) 753-5044



*Attorneys for Defendants Anthony Bevacqua and Rodney Dangerfield, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

JOAN CHILD DANGERFIELD,

                       Plaintiff,

      - against -

ANTHONY BEVACQUA and
RODNEY DANGERFIELD, INC.,

                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

**JUDGE BUCHWALD**

Case No. 06 CV 6415

**NOTICE OF REMOVAL**

**TO:**   THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR
THE SOUNTHERN DISTRICT OF NEW YORK:

       1.      Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants Anthony Bevacqua

("AB") and Rodney Dangerfield, Inc. ("RDI"), by their undersigned attorneys, Schiff Hardin

LLP, submits this Notice of Removal from the Supreme Court of the State of New York, County

of New York, in which the above-captioned action is now pending, to the United States District

Court for the Southern District of New York.  In support of this Notice, Defendants state as

follows:

**Procedural History**

       2.      On August 2, 2006, Plaintiff filed a Summons and Complaint with the

Supreme Court of the State of New York, County of New York for an action styled as "Joan

Child Dangerfield v. Anthony ("Babe") Bevacqua and Rodney Dangerfield, Inc.," Index No.
110843/06. The Plaintiff is the surviving spouse of the comedian Jacob Cohen a/k/a Jack Roy
who, together with AB, developed the fictional character known as "Rodney Dangerfield." The
Complaint alleges that Plaintiff is *believed* to be a stockholder in RDI and *believed* to be the
owner of a certain trademark that uses the name "Dangerfield's" (the "Trademark"). The
Complaint goes on to allege, completely "upon information and belief," that the Defendants have
somehow deprived her of her stockholder interest in RDI and that the Trademark, which was
filed some 25 year ago, was "fraudulently" registered.

       3.      The Complaint alleges four causes of action: (1) declaratory judgment that
Plaintiff is a 25% stockholder in RDI, (2) an order allowing Plaintiff access to various books and
records of RDI pursuant to various provisions of the Business Corporation Law (incorrectly cited
as the "GBL"), (3) a judgment declaring that Plaintiff is the owner of the Trademark (although
the cause of action appears to be mislabeled as one for a "Declaratory Judgment that RDI owns
the Mark"), (4) a money judgment for Plaintiff, representing 25% of the "profits" of RDI
believed to be "no less than $2,000,000," and (5) a money judgment for Plaintiff for "unfair
competition" arising out of the alleged misuse of the Trademark in the sum of no less than
$2,000,000. Copies of the Summons and Complaint are attached as Exhibit A.

       4.      On August 3, 2006, the state court issued an Order to Show Cause
directing the Defendants to show cause on August 22 why the Plaintiff should not be granted
summarily, the relief sought in the Complaint's Second Cause of Action (access to the books and
records of RDI pursuant to the New York Business Corporation Law). Copies of the Order to
Show Cause and supporting papers are attached as Exhibit B.

5.    On August 5, AB obtained a copy of the Summons and Complaint and the Order to Show Cause.

6.    On August 18, counsel for the Defendants corresponded with Plaintiff's counsel in a spirit of cooperation regarding Plaintiff's claims and invited a dialogue to resolve the issues alleged in the Complaint.  On August 21, having received no response from Plaintiff's counsel, counsel telephoned Plaintiff's counsel to review the status of a potential settlement.  The call went unreturned, and instead, Plaintiff's counsel sent a letter declining to discuss any settlement.

7.    During the morning of August 22, counsel spoke with Plaintiff's counsel and requested a brief adjournment of the Order to Show Cause because the conditions of counsel's retention were yet to be secured.  Plaintiff's counsel denied such request.

8.    On August 22, at the return of the Order to Show Cause, counsel appeared on behalf the Defendants and requested a short adjournment for the purpose of firming up the conditions for retention.  The Judicial Hearing Officer presiding on the return date of the Order to Show Cause denied the application.  Counsel did not consent to having the case heard by a Judicial Hearing Officer.

9.    On August 23, the Defendants fulfilled counsel's retention conditions.

10.    The materials attached as Exhibits A and B are the only pleadings, process or other papers filed in the action of which Defendants are aware.

### The Parties

11.    According to the Complaint, Plaintiff is a citizen of the State of California.  Ex. A, Complaint p. 3, ¶7.

12.    AG is a citizen of the State of New York.

13.     RDI is a corporation organized and existing under the laws of the State of New York with its principal place of business at 1118 First Avenue, New York, New York 10021, and therefore, a citizen of the State of New York for diversity purposes.

## Jurisdiction

14.     This Court has subject-matter jurisdiction of the action pursuant to 28 U.S.C. § 1332 in that it is a civil action between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest or costs.

15.     The Fourth Cause of Action and the Fifth Cause of Action of the Complaint, respectively, describe damages "which are in no event believed to be less than $2,000,000," and which are "in no event less than $2,000,000." *See* Ex. A, Complaint, pp. 9-11, ¶¶51, 59. *See also* Ex. A. Complaint, p.11 *ad damnum.*

## Basis For Removal

16.     This Court has subject matter jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332.  Venue is proper pursuant to 28 U.S.C. § 1441(a) as this is the federal district court for the district embracing the place where the state court suit is pending.

17.     This Notice of Removal is being filed within thirty (30) days of Defendants' receipt of the Complaint, as required by 28 U.S.C. § 1446(b).

18.     Written notice of the filing of this Notice of Removal will be provided to Plaintiff, and a copy of this Notice will be filed in the appropriate state court, as required by 28 U.S.C. § 1446(d).

WHEREFORE, notice is hereby given that this action is removed from the

Supreme Court of the State of New York, County of New York, to the United States District

Court for the Southern District of New York.

Dated: New York, New York
       Southern District of New York
       August 23, 2006

                     Respectfully submitted,

                     SCHIFF HARDIN LLP

By:                 _____
                     Robert J. A. Zito (RZ 6990)
                     (A Member of the Firm)
                     623 Fifth Avenue, 28th Floor
                     New York, NY  10022
                     (212) 753-5000

                     *Attorneys for Defendants Anthony Bevacqua*
                     *and Rodney Dangerfield, Inc.*

CH2\ 1505271.1

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------- x
JOAN CHILD DANGERFIELD,

                Plaintiff,

        -against-

ANTHONY ("BABE") BEVACQUA and
RODNEY DANGERFIELD, INC.,

              Defendants.

------------------------------------- x

Index No. 110843|06

Date Purchased: August 2, 2006

**SUMMONS**

Plaintiffs designate New York County as the place of trial. The basis of venue is the location of the principal place of business of Defendant Rodney Dangerfield, Inc. at 1118 First Avenue, New York, New York 10021.

TO THE ABOVE-NAMED DEFENDANTS:

    **You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York);

1

And in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, NY
       August 2, 2006

                         HERRICK, FEINSTEIN LLP

                         By: _____

                             Mara B. Levin
                             David Feuerstein
                       Attorneys for Plaintiff,
                        Joan Child Dangerfield
                       Two Park Avenue
                       New York, New York  10016
                        (212) 592-1400

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - x

JOAN CHILD DANGERFIELD,                           :    Index No.
                                                   :
                          Plaintiff,               :    **COMPLAINT**
                                                   :
             -against-                             :
                                                   :
ANTHONY ("BABE") BEVACQUA and                     :
RODNEY DANGERFIELD, INC.,                          :
                                                   :
                          Defendants.              :
                                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - x

   Joan Child Dangerfield ("Plaintiff"), by and through her attorneys, Herrick,

Feinstein LLP, as and for her complaint in the above-captioned action, hereby alleges as

follows:

   1.  This action arises out of the improper conduct of Anthony "Babe"

Bevacqua ("Babe") who, having financially benefited for decades from his friendship

with the late comic actor, Rodney Dangerfield ("Rodney"), now seeks to improperly

prevent Plaintiff, Joan Dangerfield -- Rodney's widow and the beneficiary to his estate --

from (i) having access to any information relating to the comedy club bearing Rodney's

last name, *i.e.,* Dangerfield's ("Dangerfield's" or the "Club"), owned by Rodney

Dangerfield, Inc. ("RDI"); (ii) sharing in the profits from Dangerfields, which is owned

in part by Plaintiff; and (iii) freely and solely using the service mark DANGERFIELD'S.

   2.  In or about 1969, Babe and Rodney founded Dangerfield's, which

today markets itself as the "longest running comedy club in the world," and notes on its

website that it was voted "#1 Comedy Club in America." Throughout its existence,

Dangerfield's has featured the "Best of the Best" comedians, including such household

1

names as Jay Leno, Tim Allen, Chris Rock, Jerry Seinfeld and Jim Carrey.

   3. Much of Dangerfield's success is due to the fact that its founder, Rodney Dangerfield, was (and continues to be) an icon in the world of stand-up comedy. Indeed, Rodney won a Grammy Award for his comedy album *No Respect* in 1980, received an American Comedy Award for lifetime creative achievement in 1994 and his autobiography *It's Not Easy Bein' Me* became a national bestseller. His classic white shirt and red tie were displayed in the Smithsonian Institution in Washington, D.C.

   4. Notwithstanding Rodney's role in developing and maintaining the Club, and the fact that until his death Rodney owned a substantial percentage of RDI (which at all times operated the Club), Babe still refuses to acknowledge that Plaintiff, as heir to Rodney's estate, possesses certain rights in the Club, including the right to inspect the books and records and to share in the profits of the Company.

   5. Moreover, despite the fact that the Club only licensed the mark DANGERFIELD'S, upon Rodney's death defendants fraudulently filed a trademark application and registered the mark DANGERFIELD'S, and now claim to have exclusive ownership over it.

   6. Accordingly, Plaintiff brings this action seeking (1) a declaratory judgment stating that she (i) is an owner of the Club and is entitled to inspect the Club's books and records, (ii) is entitled as an owner of the Club to share in the Club's profits, and (iii) is the exclusive owner of the mark, DANGERFIELD'S; (2) an accounting; and (3) damages for (i) defendants' improper use of the trademark and (ii) conversion of the profits generated by the Club.

**The Parties**

7.    Plaintiff, Joan Child Dangerfield ("Plaintiff" or "Joan"), is a resident of the State of California, residing in Los Angeles, California 90069.

8.    Upon information and belief, defendant Anthony "Babe" Bevacqua is a resident of the State of New York.

9.    Defendant Rodney Dangerfield, Inc. ("RDI") is a New York Corporation with its principal place of business located at 1118 First Avenue, New York, New York 10021. (RDI and Babe are collectively referred to as "Defendants".)

**The Facts**

**A.    Background**

10.    Rodney Dangerfield, born Jacob Cohen and also known as Jack Roy, was until his death on October 5, 2004, a world famous comic actor, writer and producer, who transcended generations and appeared in beloved classic comedies such as "Caddyshack" and "Back to School" (which he is also credited for writing) and "Easy Money" and television shows such as "The Ed Sullivan Show," "The Tonight Show" and "Saturday Night Live." Rodney was a headliner in Las Vegas for 35 years and appeared in several HBO specials featuring young comics that had been hand-picked by Rodney, many of whom went on to become major stars such as Roseanne Barr, Sam Kinison, Jeff Foxworthy, Andrew Dice Clay, Louie Anderson, Tim Allen, Rita Rudner, Robert Townsend, Bob Saget and Jerry Seinfeld.

11.    On December 26, 1993, Rodney married Plaintiff and stayed married to Plaintiff until his death.

12.    The Rodney Dangerfield Living Trust as amended from time to time (the "Trust"), created by Rodney, provided that Plaintiff, upon Rodney's death, shall have all of his right, title and interest in the club Dangerfield's, free of trust.

13.    Similarly, the Trust specifically provided that Plaintiff, upon Rodney's death, exclusively receive, free of trust, all of Rodney's "Entertainment Property" defined by that Trust as "all of [Rodney's] right, title and interest in and to literary, dramatic, comedy, musical and similar creative works, including without limitation, scripts, tapes, manuscripts, videotapes and motion pictures thereof, copyrights thereof, rights under contracts or licenses for the publication, performance, promotion, distribution or other exploitation thereof, and all other rights of any kind or nature, which exist in connection therewith, or which may arise or accrue therefrom, whether such literary, dramatic, comedy, musical and similar creative works shall be finished or unfinished, or published or unpublished, including any and all rights to obtain, renew or extend copyrights, trademarks or similar rights therein or relating thereto and including any right to exploit [Rodney's] name, likeness, voice and image, including any so-called "right of privacy" and "right of publicity," and [Rodney's] "website," "web page," including all products sold thereon, all revenues generated from the sale of products thereon and any licenses issued with respect to such products, and including [Rodney's] right, title and interest in and to his autobiography, whether published or unpublished, and any and all royalties or other revenue generated therefrom."

**B.    Rodney's Ownership Interest in RDI and the Club**

14.    In 1969, based largely on Rodney's popularity as a stand-up comedian (he did not become a star of the big screen until later in his career), Rodney and

4

Babe founded Dangerfield's, a comedy club located on the east side of Manhattan. The two men owned the Club through RDI, a New York corporation incorporated on or about May 7, 1969.

15.    Upon information and belief, Rodney was the President of RDI until his death.

16.    Rodney originally owned roughly 90% of RDI, while Babe owned the remaining 10%. Over time, the percentage ownership of RDI changed. In 1970, Rodney agreed to sell Babe 15% of the outstanding shares in RDI.

17.    In 1975, Rodney agreed to sell Babe an additional 50% of outstanding shares in RDI for $25,000. (See June 5, 1975 Shareholders' Agreement, annexed hereto as Exhibit A, the terms of which are fully incorporated herein.) Thus, as of June 5, 1975, Babe owned 75% of the outstanding shares of RDI, while Rodney owned 25% of RDI's outstanding shares.

18.    The 1975 Shareholders' Agreement further provided that upon a sale of the Club, the parties would split all profits in excess of $100,000 equally.

19.    Accordingly, Rodney owned 25% of RDI when he passed away on October 5, 2004 and Plaintiff, as successor to Rodney's interest, presently owns 25% of RDI.

20.    While Babe now claims that he is the sole owner of RDI, he has never produced any written agreement evidencing Rodney's transfer of his 25% ownership in RDI to Babe.

21.    As recently as late April 2006, Club employees represented to its patrons that Dangerfield's was "Rodney's club" and that "Rodney owns it."

C.    **Defendants' Purported Ownership of the Mark, "Dangerfield's"**

22.    Defendants' improper use of the mark, DANGERFIELD's, began in or about 1983.

23.    Indeed, in or about June 1983, counsel for Rodney demanded that Babe "cease and desist from the use of Mr. Dangerfield's name or likeness in any manner whatsoever in connection with the Club or otherwise."

24.    Upon information and belief, an agreement was reached between Babe and Rodney that RDI could continue to freely use the mark and, in exchange for a fee paid to Rodney, Defendants began licensing the mark, DANGERFIELD'S.

25.    This license agreement was evidenced by weekly payments from Babe and/or RDI, on the one hand, to Rodney and/or Plaintiff, on the other, that continued through July 2005.  Specifically, Babe and/or RDI paid Rodney and/or Plaintiff a licensing fee of (i) $500 per week through December 1995, and (ii) $300 per week[1] for the time period of April 1997 through July 2005.

26.    Babe has himself admitted that the weekly payments represented a license fee for the use of the mark, DANGERFIELD'S.

27.    Defendants, shortly after Rodney's death and without permission and without the knowledge from representatives of Rodney's Estate or Plaintiff, submitted a trademark application with the United States Patent and Trademark Office to register the mark DANGERFIELD'S in the name of RDI.

28.    In that application, Defendants falsely represented that RDI was the "owner" of the mark DANGERFIELD'S.  Notably, Babe signed that application as

---

[1]    Beginning in 2001, Babe and/or RDI began making bi-annual payments (in January and July) of $7800, which equals $300 per week.

the purported "Secretary/Treasurer" of RDI.

29.    RDI continues to claim that it is the sole owner of the mark, DANGERFIELD'S.

30.    Upon information and belief, Defendants ceased making any further payments to Rodney or Plaintiff once they learned that the mark DANGERFIELD'S had been registered to RDI by the U.S. Patent and Trademark Office through the wrongful filing of their application.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

31.    Plaintiff repeats and realleges paragraphs 1 - 30 as if fully set forth herein.

32.    From 1969 to October 5, 2004, Rodney owned, at a minimum, 25% of RDI.

33.    Upon his death, all of Rodney's ownership interest in RDI passed by operation of law to Plaintiff.

34.    Plaintiff is a 25% shareholder in RDI.

35.    Based on the foregoing, plaintiff requests a judicial declaration that she is a 25% shareholder in RDI and is entitled to all the benefits, rights and privileges provided for under New York law, RDI's shareholder agreements, and any other relevant documents between the parties.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Relief Under GBL §§ 624 & 718)

36.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 35.

7

37.    As a 25% shareholder of RDI, plaintiff seeks an order (i) granting her access to review the books and records of RDI pursuant to GBL § 624(d); (ii) compelling RDI to produce its balance sheet for the preceding fiscal year pursuant to GBL § 624(e); and (iii) compelling RDI to produce a list of its corporate officers and directors pursuant to GBL § 718.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Declaratory Judgment that RDI Owns the Mark, DANGERFIELD'S)

38.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 37.

39.    At all times prior to his death, Rodney owned the mark, DANGERFIELD'S.

40.    At least through Rodney's date of death, Defendants paid a licensing fee to Rodney and/or Plaintiff for their use of the mark.

41.    Upon his death, all intellectual and entertainment property rights owned by Rodney, including his interest in the mark, DANGERFIELD'S, were transferred to Plaintiff.

42.    Notwithstanding the continuous ownership in the mark DANGERFIELD'S by Rodney and thereafter, Joan, Defendants now claim that RDI is the sole owner of the mark.

43.    Because Defendants claim to be the sole owner of the mark, DANGERFIELD'S, through their fraudulent registration, Plaintiff cannot license that mark to any potential licensees or use that mark for any purpose similar to the one used by RDI.

44.    Accordingly, Plaintiff seeks a judicial declaration that she is the rightful owner of the mark, DANGERFIELD'S.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Conversion)

45.    Plaintiff repeats and realleges paragraphs 1 - 44 as if fully set forth herein.

46.    Plaintiff is a 25% shareholder in RDI.

47.    As a 25% shareholder in RDI, Plaintiff is entitled to share in whatever profits or dividends have been paid by the corporation.

48.    Since July 2003, neither Plaintiff nor Rodney has ever received any profits or dividends money from Defendants.

49.    Upon information and belief, RDI has paid dividends and profits to all other shareholders except Plaintiff and Rodney.

50.    Defendants' failure to pay Plaintiff her pro rata share of the dividends and profits of the corporation constitutes conversion.

51.    Plaintiff is entitled to 25% of all dividends and profits that have been paid since at least July 2003 to the present to be determined at trial, but which are in no event believed to be less than $2,000,000.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Unfair Competition)

52.    Plaintiff repeats and realleges paragraphs 1 - 50 as if fully set forth herein.

53.    Babe claims to be the sole owner of RDI.

54.    Notwithstanding those representations, Club employees have

9

represented to patrons of Dangerfield's as recently as April 2006, that the Club was "Rodney's club" and that "Rodney owns it."

55.    By allowing RDI's employees to represent to the public that Rodney owns the Club, Babe is intentionally confusing comedy club patrons into believing that Rodney still owns, and oversees the operations of, the Club.

56.    By continuing to claim that Rodney owns the Club, Babe and his employees intend to imply that Rodney's representatives continue to ensure that the comic talent performing at the Club meets Rodney's standards.

57.    Babe has denied Plaintiff any participation, involvement or interest in any decisions relating to the Club.

58.    In light of Babe's claim that he is the sole owner of Dangerfield's, the Club employees' statements that Rodney still owns the Club were made in bad faith.

59.    As a result of Defendants' improper conduct, Plaintiff has been injured in an amount to be determined at trial, but in no event less than $2,000,000.

Wherefore, Plaintiff demands judgment against Defendants as follows:

(a)    on Plaintiff's First Cause of Action, a judicial declaration that Plaintiff is a 25% shareholder in RDI and entitled to all the benefits and rights provided for under New York law, RDI's shareholder agreements, and any other relevant documents between the parties;

(b)    on Plaintiff's Second Cause of Action, an order pursuant to GBL §§ 624 and 718, compelling RDI to produce (i) its books and records, (ii) its balance sheet for the preceding fiscal year, and (iii) a list of its corporate officers and directors, to Plaintiff;

10

(c)    on Plaintiff's Third Cause of Action, a judicial declaration that Plaintiff is the owner of the mark, DANGERFIELD'S;

(d)    on Plaintiff's Fourth Cause of Action, monetary damages in an amount to be determined at trial, but in no event less than the value of dividends and profits that Plaintiff is entitled to from at least July 2003 to the present in an amount believed to be no less than $2,000,000;

(e)    on Plaintiff's Fifth Cause of Action, monetary damages in an amount to be determined at trial but in no event less than the $2,000,000; and

(f)    Any other and further relief as the Court deem proper, including but not limited to Plaintiff's attorneys fees and costs associated with bringing this action.

Dated: New York, NY
     August 2, 2006

HERRICK, FEINSTEIN LLP

By: _____
    Mara B. Levin
    David Feuerstein
  Attorneys for Plaintiff,
   Joan Child Dangerfield
  Two Park Avenue
  New York, New York 10016
   (212) 592-1400

11

AGREEMENT made and dated this 5th day of June, 1975,
by and between RODNEY DANGERFIELD, also known as JACK ROY, residing
at 500 East 77th Street, Borough of Manhattan, City and State of
New York, herein called FIRST PARTY, ANTHONY BEVACQUA, residing
at 67-66 108th Street, Forest Hills, New York, herein called
SECOND PARTY, and RODNEY DANGERFIELD, INC., a New York Corporation
having its principal place of business at 1118 First Avenue, Borough
of Manhattan, City and State of New York, herein called CORPORATION.

W I T N E S S E T H :

WHEREAS, the Corporation is a corporation organized
and existing under and by virtue of the laws of the State of New
York, and owns and operates a restaurant and cabaret at premises
1118 First Avenue, Borough of Manhattan, City and State of New York,
and

WHEREAS, said Corporation is authorized to issue 200
shares of common stock, without par value, and

WHEREAS, 100 shares of said common stock are presently
issued to each; the first party owns 75 shares and the second party
owns 25 shares, and

WHEREAS, the first party desires to sell 50 shares of
stock of the corporation to the second party, and the second party
is desirous of purchasing the same, and

WHEREAS, the parties have made agreements with respect
to the transfer and sale of said 50 shares of stock of the corpora-
tion, which they desire to reduce to writing.

NOW, THEREFORE, the parties do hereby agree as follows:

FIRST:  The first party does hereby agree to sell, and
the second party does hereby agree to purchase from the first party
50 shares of common stock of the corporation, for the sum of $25,000

payable upon the assignment and delivery of said 50 shares of stock. Said shares of stock shall be duly assigned and transferred by the first party to the second party, simultaneously with the execution of this agreement and the said sum of $25,000.00 shall be paid by the second party to the first party simultaneously therewith.

SECOND: It is hereby agreed between the parties that while the assignment of said 50 shares of stock is being made simultaneously herewith, adjustments of any and all dividends on stock shall be made as of the 30th day of June, 1975. Namely, any and all dividends declared or profits of the corporation distributed as of June 30, 1975, shall be distributed 75% to the first party and 25% to the second party. Conversely, any liabilities of the corporation up to and including June 30, 1975, shall be shares 75% by the first party and 25% by the second party, in the event that any contribution is required to be made by the parties to the corporation to pay such liabilities as of June 30, 1975.

THIRD: After consummation of this transaction, the first party shall be the owner of 25 shares of the corporation and the second party shall be the owner of 75 shares of the corporation, subject however, to the stipulations and agreements hereinabove and hereinafter set forth.

FOURTH: It is hereby further agreed that should the business of the corporation be sold after July 1, 1975, whether by stock sale or asset sale, that irrespective of the percentage of stock holdings, the proceeds of said sale shall be divided as follows, to wit:

a. If after payment of all obligations of the corporation, the net proceeds of sale are in excess of $100,000.00, then the first $100,000.00 shall be divided as follows: 25% to the first party, and 75% to the second party. Any excess shall be divided 50% to each individual party hereto.

b. In the event that the net proceeds after payment of such obligations are $100,000.00 or less, then such proceeds

shall be divided 25% to the first party and 75% to the second party.

FIFTH: It is hereby further agreed that the first party shall not be required to devote any specific time to the business of the corporation or to render services as an entertainer. In the event that the first party shall render services as entertainer for the corporation, he shall receive compensation therefor on the same basis as heretofore paid to him.

SIXTH: It is further agreed that the second party henceforth may directly or indirectly become engaged in any other business of any kind or nature, including but not limited to the restaurant or cabaret business and may render services in connection with such other business and/or be an officer, stockholder, director or employee thereof, any agreements between the parties to the contrary heretofore entered into, notwithstanding.

SEVENTH: Except as herein modified, any and all agreements heretofore entered into between the parties shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals, the day and year first above written.

_____
Rodney Dangerfield

_____
Anthony Bevacqua

RODNEY DANGERFIELD, INC.

By _____

Exhibit B

**REQUEST FOR JUDICIAL INTERVENTION** 8/2/06     UCS-840 (REV 1/2000)

| | For Clerk Only |
|---|---|

COURT? COURT, COUNTY? COUNTY    INDEX NO. 116843 DATE PURCHASED
Supreme Court, New York      INDEX #? 2006 PURCHASE DATE?

PLAINTIFF'S Name(s):

JOAN CHILD DANGERFIELD,

IAS entry date

DEFENDANT'S Name(s):

ANTHONY ("BABE") BEVACQUA and RODNEY DANGERFIELD, INC.

Judge Assigned

RJI Date

---

Date issue jointed: ____Date issued jointed?__ Bill of particulars served: ☐ Yes ☒ No

**NATURE OF JUDICIAL INTERVENTION** (check <u>ONE</u> box only <u>AND</u> enter information)

☐ Request for preliminary conference

☐ Note of issue and/or certificate of readiness

☐ Notice of motion (return date _____)
Relief sought _____)

☒ Order to show cause
(clerk enter return date _____)
Relief sought _____

☐ Other ex parte application (specify _____
_____)

☐ Notice of petition (return date _____)
Relief sought _____

☐ Notice of medical or dental malpractice
action (specify _____
_____)

☐ Statement of net worth

☐ Writ of habeas corpus

☐ Other (specify _____
_____)

---

**NATURE OF ACTION OR PROCEEDING** (Check <u>ONE</u> box only)

**MATRIMONIAL**
☐ Contested    -CM
☐ Uncontested    -UM

**COMMERICAL**
☐ Contract    -CONT
☒ Corporate    -CORP
☐ Insurance (where insurer is a party, except arbitration)   -INS
☐ UCC (including sales, negotiable instruments)   -UCC
☐ *Other Commercial    -OC

**REAL PROPERTY**
☐ Tax Certiorari    -TAX
☐ Foreclosure    -FOR
☐ Condemnation    -COND
☐ Landlord/Tenant    -LT
☐ *Other Real Property    -ORP

**OTHER MATTERS**
☐ *    -OTH

**TORTS**
Malpractice
☐ Medical/Podiatric    -MM
☐ Dental    -DM
☐ *Other professional    -OPM

☐ Motor Vehicle    -MV
☐ *Products Liability    -PL
☐ Environmental    -EN
☐ Asbestos    -ASB
☐ Breast Implant    -BI
☐ *Other Negligence    -OTN

☐ *Other Tort (including intentional)    -OT

**SPECIAL PROCEEDINGS**
☐ Art. 75 (Arbitration)    -ART75
☐ Art. 77 (Trusts)    -ART77
☐ Art. 78    -ART78
☐ Election Law    -ELEC
☐ Guardianship (MHL art. 81)   -GUARD81
☐ *Other Mental Hygiene_____   -MHYG
☐ *Other Special Proceeding    -OSP

Check "YES" or "NO" for each of the follow questions:

Is this Action/proceeding against a:
☐ YES  ☒ NO  Municipality:        ☐ YES  ☐ NO  Public Authority:
(Specify_____)              (Specify_____)
☒ YES  ☐ NO  Does this action/proceeding seek equitable relief?
☒ YES  ☒ NO  Does this action/proceeding seek recovery for personal injury?
☐ YES  ☒ NO  Does this action/proceeding seek recovery for property damage?

Pre-Note Time Frames:
(This applies to all cases except contested matrimonials and tax certiorari cases)

Estimated time period for case to be ready for trial (from filing of RJI to filing of Note of Issue):
☐ Expedited: 0-8 months  ☒ Standard: 9-12 months  ☐ Complex: 13-15 months
Contested Matrimonial Cases Only:        (Check and give date)

Has summons been served:         ☐ No   ☐ Yes, Date
Was a Notice of No Necessity filed?   ☐ No   ☐ Yes, Date

ATTORNEY(S) FOR PLAINTIFF(S):

| Self Rep. * | Name | Address | Phone # |
|---|---|---|---|
| ☐ | Attorney for Plaintiff(s) | Pltf. Attorneys' Address | Pltf. Attorneys' Telephone |
| ☐ | Herrick, Feinstein LLP | 2 Park Avenue, NY, NY 10016 | 212-592-1400 |

ATTORNEY(S) FOR DEFENDANT(S):

| Self Rep.* | Name | Address | Phone # |
|---|---|---|---|
| ☐ | Attorney for Defendant(s) | Dft. Attorneys' Address | Dft. Attorneys' Telephone |
| ☐ | | | |

*Self Represented: parties representing themselves, without an attorney, should check the "Self Rep." box and enter their name, address, and phone # in space provided for attorneys.

INSURANCE CARRIERS:



RELATED CASES:  (IF none, WRITE "none" BELOW)

| Title | Index | Court | Nature of Relationship |
|---|---|---|---|

I AFFIRM UNDER PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN FILED IN THIS ACTION OR PROCEEDING.

Dated:  _August 2, 2006_____        _Mara Levin (signature)_____
                          (SIGNATURE)

                          Mara Levin

                          Attorneys for Plaintiff

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOAN CHILD DANGERFIELD,                         :   Index No.
                                            :
              Plaintiff,             :
                                            :   **COMMERCIAL DIVISION**
        -against-             :   **ATTORNEY'S CERTIFICATION**
                                            :
ANTHONEY ("BABE") BEVACQUA and     :
RODNEY DANGERFIELD, INC.,         :
                                            :
                Defendants.       :
                                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

        MARA B. LEVIN, an attorney duly admitted to practice law before the Courts of the

State of New York, hereby affirms the following statements to be true under the penalties of

perjury:

        1.     I am the attorney for the plaintiff and submit this affirmation in support of

assignment of this action to the Commercial Division.

        2.     This case involves claims for a declaratory judgment, conversion and unfair

competition in connection with, *inter alia*, the failure to pay profits to plaintiff as a shareholder

in the defendant corporation and defendants' improper use of the mark Dangerfield's. Plaintiff's

claim for damages exceeds $100,000.

        3.     I am fully familiar with the facts and pleadings in this action and have reviewed

the Rules of the Commercial Division, New York County, including the Guidelines for the

Assignment of Cases to a Commercial Part.

        4.     I believe that this case complies with the Guidelines for the Assignment of Cases

to a Commercial Part and should be assigned to the Commercial Division.

Dated:   August 2, 2006

                                                  MARA B. LEVIN

SUPREME COURT
STATE OF NEW YORK

APPROVED

COMMERCIAL DIVISION
SUPPORT OFFICE
☐ X-MO  ☐ MOT

CLERK'S
INITIALS

At IAS Part 27 of the Supreme Court of the State of New York, held in and for the County of New York, at the Courthouse located at 60 Centre, New York, New York on the 3 day of August, 2006.

P R E S E N T:

Hon. _____, J.S.C.

012103

019312

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MOTION SEQUENCE # 001

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JOAN CHILD DANGERFIELD,                     : Index No. 110843/2006

                           Plaintiff,       : **ORDER TO SHOW CAUSE**

            -against-                        :

                                            :  #9658

ANTHONEY ("BABE") BEVACQUA and              :
RODNEY DANGERFIELD, INC.,                    :

                           Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

VAL 3

INDEX NUMBER 110843  YEAR 2006
  6 RJI FEE                      95.00
 15 MOTIONS                      45.00
 MOT of   Joan Child            140.00
 CHECK                           95.00
 CHECK                           45.00

CONS CASHIER    DATE    TIME  TER

        Upon reading and filing of the accompanying affirmation of Joan Child Dangerfield, dated July 25, 2006, together with the exhibits annexed thereto, and the Complaint, dated August 2, 2006, let defendants Anthony ("Babe") Bevacqua and Rodney Dangerfield, Inc. (collectively referred to as "Defendants") or their attorney(s), show cause at IAS Part 27 of this Court, Room 242 to be held a the county courthouse located at 60 Centre Street, New York, New York, on the 22 HD of Aug, 2006, at 12 o'clock Noon in the _____ of that day, or as soon thereafter as counsel can be heard, why:

        (i) an order pursuant to GBL § 624(d) should not be entered granting Plaintiff immediate access to the books and records of Rodney Dangerfield, Inc. ("RDI"); and

Exhibit A         Exhibit B         Exhibit C         Exhibit D

(ii) an order pursuant to GBL § 624(e) should not be entered compelling RDI to produce its balance sheet for the preceding fiscal year; and

(iii) an order pursuant to GBL § 718 should not be entered compelling RDI to produce a list of its corporate officers and directors.

Pending the hearing ~~and determination~~ of this application, it is hereby:

ORDERED that service of a copy of this Order to Show Cause, together with its supporting papers, by Federal Express priority overnight mail upon Defendants, on or before August ___4___, 2006, shall be deemed good and sufficient service; and it is further

ORDERED that Defendants' papers in opposition to this application, if any, shall be served upon counsel for the Plaintiff so as to be received on or before August ___, 2006; and it is further

ORDERED that Plaintiff's reply papers, if any, shall be served upon counsel for Defendants' so as to be received on or before August ___, 2006.

ENTER:

_____
J.S.C.

ORAL ARGUMENT
DIRECTED
J.S.C.

2

HF 3326874v.1 #12118/0001

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- --- --- --- --- --- --- --- --- --- --- --- --- --- --- -x

JOAN CHILD DANGERFIELD,         :    Index No.
                                             :
               Plaintiff,         :
                                             :    **AFFIDAVIT OF**
         -against-         :    **JOAN CHILD DANGERFIELD**
                                             :    **IN SUPPORT OF PLAINTIFF'S**
ANTHONEY ("BABE") BEVACQUA and    :    **ORDER TO SHOW CAUSE**
RODNEY DANGERFIELD, INC.,         :
                                             :
             Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

STATE OF CALIFORNIA)
               ss.:
COUNTY OF LOS ANGELES)

         Joan Child Dangerfield, being duly sworn, deposes and states as follows:

         1.      I am over the age of 18 and reside in Los Angeles, California.  I make these statements in support of the Order to Show Cause in the action I have commenced against the Rodney Dangerfield, Inc., the owner of the club Dangerfield's, and the Club's Secretary/Treasurer, Anthony ("Babe") Bevacqua.  I have personal knowledge of the matters set forth herein.

### Background

         2.      On December 26, 1993, I married Rodney Dangerfield ("Rodney").

         3.      Rodney and I stayed married until Rodney's death on October 5, 2004.

         4.      Upon Rodney's death, I inherited all of Rodney's right, title and interest in his entertainment property, including but not limited to (i) Rodney's 25% interest in Rodney Dangerfield, Inc. ("RDI"), which owns the New York City comedy club Dangerfield's ("Dangerfield's" or the "Club"), and (ii) 100% ownership in the trademark

1

DANGERFIELD'S (the "Mark").

5.    Despite my interests in RDI, the Club, and the Mark, defendant, Anthony Bevacqua ("Babe") claims to have exclusive ownership of those assets. As discussed below, Babe is wrong.

## Rodney's Ownership Interest in Dangerfield's

6.    In 1969, Rodney and Babe founded Dangerfield's, a comedy club located on the east side of Manhattan. They owned the Club through RDI, a New York corporation incorporated on or about May 7, 1969.

7.    Over time, the percentage ownership of RDI changed. At first, Rodney owned 90 percent; Babe, 10 percent. In 1970, Rodney agreed to sell Babe 15% of the outstanding shares in RDI so that the percentage ownership in the company went from 90% Rodney, 10% Babe, to 75% Rodney, 25% Babe. In 1975, Rodney agreed to sell Babe an additional 50% of outstanding shares in RDI for $25,000. (See June 5, 1975 Shareholders' Agreement, a true and correct copy of which is attached as Exhibit A to the Complaint in this Action.) Thus, as of June 5, 1975, Babe owned 75% of the outstanding shares of RDI, while Rodney owned 25% of RDI's outstanding shares.

8.    It has always been my belief, based on conversations I had with Rodney over the years, that Rodney maintained his ownership interest in RDI and I believe today that Rodney owned 25% of RDI when he passed away on October 5, 2004.

9.    Based on inter vivos trust documents and Rodney's will, I inherited his 25% ownership interest in RDI on the date of his death and am a 25% owner of the Club today.

2

**Babe's Failure to Pay Dividends and Profits from the Club
and Provide Me with Access to RDI's Books and Records**

10.     On November 14, 2005, Layne David Dicker contacted Babe on my behalf to inform him that I was a 25% owner of the Club.  (A true and correct copy of that Mr. Dicker's letter is attached hereto as Exhibit "A".)

11.     Babe responded to Mr. Dicker's letter on or about November 30, 2005.  In that letter, Babe claimed that he made verbal agreements with Rodney and that I possessed no ownership interest in RDI or the Club.  Rather, Babe stated that he currently had in his possession "all shares of Rodney Dangerfield Incorporated."  (A true and correct copy of Babe's letter is attached hereto as Exhibit "B".)

12.     In February 2006, Mr. Dicker again wrote Babe asking for "copies of the outstanding stock certificates purportedly in your possession."  (A true and correct copy of Mr. Dicker's letter is attached hereto as Exhibit "C".)

13.     Babe never responded to Mr. Dicker's request.  Nor has Babe provided any other documentary evidence that even suggests that he is the sole owner of RDI and the Club.

14.     In or about late April or early May 2006, I approached Babe to discuss with him my ownership interest in RDI and the Club.  In particular, I wanted to understand why he believed that I was not a shareholder in RDI and was not entitled to any dividend payments or profits from the Club.

15.     Rather than explain his belief, Babe simply repeated his claim that I was entitled to nothing since he was the sole owner of RDI and the Club.

16.     Notwithstanding Babe's claim and his refusal to provide me with access to

3

the books and records of the Club, Club employees continue to represent to Club patrons that Dangerfield's was "Rodney's club" and that "Rodney owns it."

17.    As a 25% shareholder of RDI, I have been advised that I am entitled to have access to the books and records of RDI, review its balance sheet for the preceding fiscal year, and see a list of its corporate officers and directors.

18.    Babe will not provide me with any information regarding the Club as he claims he is the exclusive owner of RDI.

19.    Without access to these books and records, I have no ability to confirm or determine the Club's financial viability and whether Babe has improperly failed to pay dividends and/or profits to me since succeeding to Rodney's ownership of the Club and to Rodney prior to his death.

20.    Prior to Rodney's death, Babe never denied to Rodney that Rodney was a partial owner. In fact, in Rodney's discussions with Babe, Babe often claimed that the Club wasn't doing well and that is why no profits were being distributed.

21.    While Rodney often articulated to me that he thought Babe was cheating him, he was too involved in other matters to pursue litigating against Babe. However, Rodney's ownership in the Club was always a source of pride for him and he left me his interest in the Club intending for me to pursue Babe for his wrongful conduct.

4

## Conclusion

22.    For the foregoing reasons, I respectfully request that the Court should

grant the motion.

Dated: New York, NY
       July 25, 2006

JOAN CHILD DANGERFIELD

Sworn to this 27 day of July, 2006.

Notary Public

LINDA HARRIS-BOYD
Commission # 1501556
Notary Public - California
Los Angeles County
My Comm. Expires Jul 18, 2008

HF 3327652v.1 #12118/0001 07/12/2006 04:48 PM

# TMG

### The Management Group

9100 Wilshire Boulevard, Suite 400 West    Beverly Hills, California 90212
310.271.0300 / 310.271.0070 Fax

November 14, 2005

<u>Personal and Confidential</u>
Mr. Anthony Bevacqua
Dangerfield's
1118 1ˢᵗ Avenue
New York, New York 1021

Re:    Dangerfield's

Dear Babe:

As you know, our office represented Rodney Dangerfield, and continues to represent Joan Dangerfield and The Estate of Rodney Dangerfield.

Please be advised that we are now preparing the final estate tax return for Rodney and questions have, once again, arisen as to the ownership of "Dangerfield's" in New York. As you may recall, you and I discussed this matter earlier in the year and, as my notes reflect, it was your assertion (i) that you were, and have always been, the sole owner of "Dangerfield's", (ii) that your sole obligation to our clients was the payment of the sum of three hundred dollars ($300.00) per week, (iii) that this sum represented a license fee for the use of the name, "Dangerfield's" and (iv) that you had no "paperwork" memorializing your agreements with Rodney. Our records do reflect that the sum of three hundred dollars ($300.00) per week has been paid in recent years, although more distant records reflect a meaningfully different and less consistent payment pattern.

I have now received and reviewed documents that reflect that the club was, and appears to still be, owned by a New York Corporation, formed in 1969, and named "Rodney Dangerfield, Inc." ("RDI"). At the time of the formation of RDI, ninety percent (90%) of the corporate stock was issued to Rodney and ten percent (10%) was issued to you. Approximately one year thereafter, Rodney transferred, to you, fifteen percent (15%) of the RDI stock and, in approximately 1975, sold you a further fifty percent (50%) of the outstanding stock of RDI for the sum of twenty-five thousand dollars ($25,000.00). Therefore, as of 1975, RDI owned one hundred percent (100%) of Dangerfield's, Rodney owned twenty-five percent (25%) of RDI and you owned seventy-five percent (75%) of RDI. Nothing that we have reviewed makes any further modifications of this allocation.

This is a very difficult situation. In all candor, Rodney was relatively certain that he was not receiving everything to which he was entitled from the club. He mentioned this to me, and I am told that it was a repeated topic of conversation between he and Joan, but until receipt of the foregoing, we had no

Mr. Anthony Bevacqua
November 14, 2005
Page 2


documentary guidance available to us. It is now clear that there is paperwork respecting the ownership of the club and that Rodney maintained a meaningful ownership interest.

Of course, the question now becomes what, if anything, happened after 1975? Accordingly, once again, we would ask that you please search your memory and your records for anything that might shed some light on this matter. Given that your findings and recollections may be used to substantiate matters contained in tax returns, we would ask that you respond in writing, and within two (2) weeks of the date of this letter.

Thank you for your time and for your continued assistance in this matter.

Sincerely,

Layne David Dicker
Attorney at Law


LDD/ms
cc:      Client

# DANGERFIELD'S

(212) 593-1650

1118 FIRST AVENUE (Bet. 61st & 62nd Sts.) NEW YORK, N.Y. 10021

November 30, 2005

Personal and Confidential
Mr. Layne David Dicker
The Management Group
9100 Wilshire Boulevard, Suite 400 West
Beverly Hills, California 90212

Re: letter dated 11-14-05

Dear Layne,

Hope all is well.
I hope the following information is useful in your work concerning Rodney's taxes.
Rodney and I have been close friends and business partners for most of our lives. When
two parties are in a close personal and business relationship for such a long time you'll
find that both parties become an integral part in all aspects of each others lives. It is
inevitable that during such a long relationship that, from time to time, verbal agreements
between both parties will be made. Such is the case between Rodney and myself.

One of these verbal agreements was for a periodic payment to be made personally to
Rodney. When Rodney passed away, as a courtesy, I continued to make these payments to
do what I could to help ease Joan through her period of mourning.

The name "Dangerfield's" solely belongs to Rodney Dangerfield Incorporated. I currently
have in my possession all shares of Rodney Dangerfield Incorporated.

This is a difficult situation for me. In all candor, I have not received everything to which
Rodney and I had agreed too many years ago. This had been a repeated topic of
conversation between Rodney and myself. Rodney's response to my inquires of when I
would receive my share of our life long work together would always be "it's coming Babe,
don't worry", and "your with me Babe". Rodney in his own words mentions his obligation
to me in his autobiography.

Please send my best regards and love to Joan.

Sincerely,

Anthony Bevacqua

# TMG

### The Management Group

9100 Wilshire Boulevard, Suite 400 West    Beverly Hills, California 90212
310.271.0300 / 310.271.0070 Fax

February 23, 2006

**Personal and Confidential**
Mr. Anthony Bevacqua
Dangerfield's
1118 1st Avenue
New York, New York 10021

Re:    **Dangerfield's**

Dear Babe:

We are in receipt of your letter dated November 30, 2005, and thank you for same. Unfortunately the information that you provided in said letter failed to cast any further light on the issue of the ownership of Dangerfield's, and we were required to leave this item as "undetermined" on the Estate tax return.

At this point, it might be helpful to see copies of the outstanding stock certificates purportedly in your possession. Accordingly, please provide us with copies of all such certificates, both front and back. Please feel free to designate these documents as "copies" in some conspicuous manner, but not such that it will impair our review and inspection of same.

Thank you for your anticipated cooperation.

Sincerely,

Layne David Dicker
Attorney at Law

LDD/ms
cc:    Client

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOAN CHILD DANGERFIELD,

                Plaintiff,

         -against-

ANTHONY ("BABE") BEVACQUA and
RODNEY DANGERFIELD, INC.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:  Index No.
:
:  Date Purchased: August ____, 2006
:
:
:  **SUMMONS**
:
:  Plaintiffs designate New York County as
:  the place of trial.  The basis of venue is
:  the location of the principal place of
:  business of Defendant Rodney
:  Dangerfield, Inc. at 1118 First Avenue,
  New York, New York 10021.

TO THE ABOVE-NAMED DEFENDANTS:

      **You are hereby summoned** to answer the complaint in this action and to serve a

copy of your answer, or, if the complaint is not served with this summons, to serve a

notice of appearance, on Plaintiff's Attorney(s) within 20 days after the service of this

summons, exclusive of the day of service (or within 30 days after the service is complete

if this summons is not personally delivered to you within the State of New York);

1

HF 3344827v.1 #10163/0043

And in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, NY
      August 2, 2006

HERRICK, FEINSTEIN LLP

By: _____

Mara B. Levin
David Feuerstein
Attorneys for Plaintiff,
 Joan Child Dangerfield
Two Park Avenue
New York, New York 10016
(212) 592-1400

HF 3344827v.1 #10163/0043

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOAN CHILD DANGERFIELD,           :   Index No.

                          :

                 Plaintiff,   :   **COMPLAINT**

                          :

           -against-     :

                          :

ANTHONY ("BABE") BEVACQUA and   :
RODNEY DANGERFIELD, INC.,       :

                          :

            Defendants.  :

                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Joan Child Dangerfield ("Plaintiff"), by and through her attorneys, Herrick, Feinstein LLP, as and for her complaint in the above-captioned action, hereby alleges as follows:

       1.      This action arises out of the improper conduct of Anthony "Babe" Bevacqua ("Babe") who, having financially benefited for decades from his friendship with the late comic actor, Rodney Dangerfield ("Rodney"), now seeks to improperly prevent Plaintiff, Joan Dangerfield -- Rodney's widow and the beneficiary to his estate -- from (i) having access to any information relating to the comedy club bearing Rodney's last name, *i.e.*, Dangerfield's ("Dangerfield's" or the "Club"), owned by Rodney Dangerfield, Inc. ("RDI"); (ii) sharing in the profits from Dangerfields, which is owned in part by Plaintiff; and (iii) freely and solely using the service mark DANGERFIELD'S.

       2.      In or about 1969, Babe and Rodney founded Dangerfield's, which today markets itself as the "longest running comedy club in the world," and notes on its website that it was voted "#1 Comedy Club in America." Throughout its existence, Dangerfield's has featured the "Best of the Best" comedians, including such household

1

names as Jay Leno, Tim Allen, Chris Rock, Jerry Seinfeld and Jim Carrey.

      3.      Much of Dangerfield's success is due to the fact that its founder, Rodney Dangerfield, was (and continues to be) an icon in the world of stand-up comedy. Indeed, Rodney won a Grammy Award for his comedy album *No Respect* in 1980, received an American Comedy Award for lifetime creative achievement in 1994 and his autobiography *It's Not Easy Bein' Me* became a national bestseller. His classic white shirt and red tie were displayed in the Smithsonian Institution in Washington, D.C.

      4.      Notwithstanding Rodney's role in developing and maintaining the Club, and the fact that until his death Rodney owned a substantial percentage of RDI (which at all times operated the Club), Babe still refuses to acknowledge that Plaintiff, as heir to Rodney's estate, possesses certain rights in the Club, including the right to inspect the books and records and to share in the profits of the Company.

      5.      Moreover, despite the fact that the Club only licensed the mark DANGERFIELD'S, upon Rodney's death defendants fraudulently filed a trademark application and registered the mark DANGERFIELD'S, and now claim to have exclusive ownership over it.

      6.      Accordingly, Plaintiff brings this action seeking (1) a declaratory judgment stating that she (i) is an owner of the Club and is entitled to inspect the Club's books and records, (ii) is entitled as an owner of the Club to share in the Club's profits, and (iii) is the exclusive owner of the mark, DANGERFIELD'S; (2) an accounting; and (3) damages for (i) defendants' improper use of the trademark and (ii) conversion of the profits generated by the Club.

## The Parties

7.      Plaintiff, Joan Child Dangerfield ("Plaintiff" or "Joan"), is a resident of the State of California, residing in Los Angeles, California 90069.

8.      Upon information and belief, defendant Anthony "Babe" Bevacqua is a resident of the State of New York.

9.      Defendant Rodney Dangerfield, Inc. ("RDI") is a New York Corporation with its principal place of business located at 1118 First Avenue, New York, New York 10021.  (RDI and Babe are collectively referred to as "Defendants".)

## The Facts

### A.      Background

10.     Rodney Dangerfield, born Jacob Cohen and also known as Jack Roy, was until his death on October 5, 2004, a world famous comic actor, writer and producer, who transcended generations and appeared in beloved classic comedies such as "Caddyshack" and "Back to School" (which he is also credited for writing) and "Easy Money" and television shows such as "The Ed Sullivan Show," "The Tonight Show" and "Saturday Night Live."  Rodney was a headliner in Las Vegas for 35 years and appeared in several HBO specials featuring young comics that had been hand-picked by Rodney, many of whom went on to become major stars such as Roseanne Barr, Sam Kinison, Jeff Foxworthy, Andrew Dice Clay, Louie Anderson, Tim Allen, Rita Rudner, Robert Townsend, Bob Saget and Jerry Seinfeld.

11.     On December 26, 1993, Rodney married Plaintiff and stayed married to Plaintiff until his death.

3

12.    The Rodney Dangerfield Living Trust as amended from time to time (the "Trust"), created by Rodney, provided that Plaintiff, upon Rodney's death, shall have all of his right, title and interest in the club Dangerfield's, free of trust.

13.    Similarly, the Trust specifically provided that Plaintiff, upon Rodney's death, exclusively receive, free of trust, all of Rodney's "Entertainment Property" defined by that Trust as "all of [Rodney's] right, title and interest in and to literary, dramatic, comedy, musical and similar creative works, including without limitation, scripts, tapes, manuscripts, videotapes and motion pictures thereof, copyrights thereof, rights under contracts or licenses for the publication, performance, promotion, distribution or other exploitation thereof, and all other rights of any kind or nature, which exist in connection therewith, or which may arise or accrue therefrom, whether such literary, dramatic, comedy, musical and similar creative works shall be finished or unfinished, or published or unpublished, including any and all rights to obtain, renew or extend copyrights, trademarks or similar rights therein or relating thereto and including any right to exploit [Rodney's] name, likeness, voice and image, including any so-called "right of privacy" and "right of publicity," and [Rodney's] "website," "web page," including all products sold thereon, all revenues generated from the sale of products thereon and any licenses issued with respect to such products, and including [Rodney's] right, title and interest in and to his autobiography, whether published or unpublished, and any and all royalties or other revenue generated therefrom."

**B.    Rodney's Ownership Interest in RDI and the Club**

14.    In 1969, based largely on Rodney's popularity as a stand-up comedian (he did not become a star of the big screen until later in his career), Rodney and

4

Babe founded Dangerfield's, a comedy club located on the east side of Manhattan.  The two men owned the Club through RDI, a New York corporation incorporated on or about May 7, 1969.

15.     Upon information and belief, Rodney was the President of RDI until his death.

16.     Rodney originally owned roughly 90% of RDI, while Babe owned the remaining 10%.  Over time, the percentage ownership of RDI changed.  In 1970, Rodney agreed to sell Babe 15% of the outstanding shares in RDI.

17.     In 1975, Rodney agreed to sell Babe an additional 50% of outstanding shares in RDI for $25,000.  (See June 5, 1975 Shareholders' Agreement, annexed hereto as Exhibit A, the terms of which are fully incorporated herein.)  Thus, as of June 5, 1975, Babe owned 75% of the outstanding shares of RDI, while Rodney owned 25% of RDI's outstanding shares.

18.     The 1975 Shareholders' Agreement further provided that upon a sale of the Club, the parties would split all profits in excess of $100,000 equally.

19.     Accordingly, Rodney owned 25% of RDI when he passed away on October 5, 2004 and Plaintiff, as successor to Rodney's interest, presently owns 25% of RDI.

20.     While Babe now claims that he is the sole owner of RDI, he has never produced any written agreement evidencing Rodney's transfer of his 25% ownership in RDI to Babe.

21.     As recently as late April 2006, Club employees represented to its patrons that Dangerfield's was "Rodney's club" and that "Rodney owns it."

5

**C.    Defendants' Purported Ownership of the Mark, "Dangerfield's"**

22.    Defendants' improper use of the mark, DANGERFIELD's, began in or about 1983.

23.    Indeed, in or about June 1983, counsel for Rodney demanded that Babe "cease and desist from the use of Mr. Dangerfield's name or likeness in any manner whatsoever in connection with the Club or otherwise."

24.    Upon information and belief, an agreement was reached between Babe and Rodney that RDI could continue to freely use the mark and, in exchange for a fee paid to Rodney, Defendants began licensing the mark, DANGERFIELD'S.

25.    This license agreement was evidenced by weekly payments from Babe and/or RDI, on the one hand, to Rodney and/or Plaintiff, on the other, that continued through July 2005. Specifically, Babe and/or RDI paid Rodney and/or Plaintiff a licensing fee of (i) $500 per week through December 1995, and (ii) $300 per week[1] for the time period of April 1997 through July 2005.

26.    Babe has himself admitted that the weekly payments represented a license fee for the use of the mark, DANGERFIELD'S.

27.    Defendants, shortly after Rodney's death and without permission and without the knowledge from representatives of Rodney's Estate or Plaintiff, submitted a trademark application with the United States Patent and Trademark Office to register the mark DANGERFIELD'S in the name of RDI.

28.    In that application, Defendants falsely represented that RDI was the "owner" of the mark DANGERFIELD'S. Notably, Babe signed that application as

---

[1]    Beginning in 2001, Babe and/or RDI began making bi-annual payments (in January and July) of $7800, which equals $300 per week.

the purported "Secretary/Treasurer" of RDI.

29.    RDI continues to claim that it is the sole owner of the mark, DANGERFIELD'S.

30.    Upon information and belief, Defendants ceased making any further payments to Rodney or Plaintiff once they learned that the mark DANGERFIELD'S had been registered to RDI by the U.S. Patent and Trademark Office through the wrongful filing of their application.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

31.    Plaintiff repeats and realleges paragraphs 1 - 30 as if fully set forth herein.

32.    From 1969 to October 5, 2004, Rodney owned, at a minimum, 25% of RDI.

33.    Upon his death, all of Rodney's ownership interest in RDI passed by operation of law to Plaintiff.

34.    Plaintiff is a 25% shareholder in RDI.

35.    Based on the foregoing, plaintiff requests a judicial declaration that she is a 25% shareholder in RDI and is entitled to all the benefits, rights and privileges provided for under New York law, RDI's shareholder agreements, and any other relevant documents between the parties.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Relief Under GBL §§ 624 & 718)

36.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 35.

37.    As a 25% shareholder of RDI, plaintiff seeks an order (i) granting her access to review the books and records of RDI pursuant to GBL § 624(d); (ii) compelling RDI to produce its balance sheet for the preceding fiscal year pursuant to GBL § 624(e); and (iii) compelling RDI to produce a list of its corporate officers and directors pursuant to GBL § 718.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Declaratory Judgment that RDI Owns the Mark, DANGERFIELD'S)

38.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 37.

39.    At all times prior to his death, Rodney owned the mark, DANGERFIELD'S.

40.    At least through Rodney's date of death, Defendants paid a licensing fee to Rodney and/or Plaintiff for their use of the mark.

41.    Upon his death, all intellectual and entertainment property rights owned by Rodney, including his interest in the mark, DANGERFIELD'S, were transferred to Plaintiff.

42.    Notwithstanding the continuous ownership in the mark DANGERFIELD'S by Rodney and thereafter, Joan, Defendants now claim that RDI is the sole owner of the mark.

43.    Because Defendants claim to be the sole owner of the mark, DANGERFIELD'S, through their fraudulent registration, Plaintiff cannot license that mark to any potential licensees or use that mark for any purpose similar to the one used by RDI.

8

44.     Accordingly, Plaintiff seeks a judicial declaration that she is the rightful owner of the mark, DANGERFIELD'S.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Conversion)

45.     Plaintiff repeats and realleges paragraphs 1 - 44 as if fully set forth herein.

46.     Plaintiff is a 25% shareholder in RDI.

47.     As a 25% shareholder in RDI, Plaintiff is entitled to share in whatever profits or dividends have been paid by the corporation.

48.     Since July 2003, neither Plaintiff nor Rodney has ever received any profits or dividends money from Defendants.

49.     Upon information and belief, RDI has paid dividends and profits to all other shareholders except Plaintiff and Rodney.

50.     Defendants' failure to pay Plaintiff her pro rata share of the dividends and profits of the corporation constitutes conversion.

51.     Plaintiff is entitled to 25% of all dividends and profits that have been paid since at least July 2003 to the present to be determined at trial, but which are in no event believed to be less than $2,000,000.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Unfair Competition)

52.     Plaintiff repeats and realleges paragraphs 1 - 50 as if fully set forth herein.

53.     Babe claims to be the sole owner of RDI.

54.     Notwithstanding those representations, Club employees have

represented to patrons of Dangerfield's as recently as April 2006, that the Club was "Rodney's club" and that "Rodney owns it."

55.    By allowing RDI's employees to represent to the public that Rodney owns the Club, Babe is intentionally confusing comedy club patrons into believing that Rodney still owns, and oversees the operations of, the Club.

56.    By continuing to claim that Rodney owns the Club, Babe and his employees intend to imply that Rodney's representatives continue to ensure that the comic talent performing at the Club meets Rodney's standards.

57.    Babe has denied Plaintiff any participation, involvement or interest in any decisions relating to the Club.

58.    In light of Babe's claim that he is the sole owner of Dangerfield's, the Club employees' statements that Rodney still owns the Club were made in bad faith.

59.    As a result of Defendants' improper conduct, Plaintiff has been injured in an amount to be determined at trial, but in no event less than $2,000,000.

Wherefore, Plaintiff demands judgment against Defendants as follows:

(a)    on Plaintiff's First Cause of Action, a judicial declaration that Plaintiff is a 25% shareholder in RDI and entitled to all the benefits and rights provided for under New York law, RDI's shareholder agreements, and any other relevant documents between the parties;

(b)    on Plaintiff's Second Cause of Action, an order pursuant to GBL §§ 624 and 718, compelling RDI to produce (i) its books and records, (ii) its balance sheet for the preceding fiscal year, and (iii) a list of its corporate officers and directors, to Plaintiff;

10

(c)    on Plaintiff's Third Cause of Action, a judicial declaration that Plaintiff is the owner of the mark, DANGERFIELD'S;

(d)    on Plaintiff's Fourth Cause of Action, monetary damages in an amount to be determined at trial, but in no event less than the value of dividends and profits that Plaintiff is entitled to from at least July 2003 to the present in an amount believed to be no less than $2,000,000;

(e)    on Plaintiff's Fifth Cause of Action, monetary damages in an amount to be determined at trial but in no event less than the $2,000,000; and

(f)    Any other and further relief as the Court deem proper, including but not limited to Plaintiff's attorneys fees and costs associated with bringing this action.

Dated: New York, NY
      August 2, 2006

HERRICK, FEINSTEIN LLP

By:_____

Mara B. Levin
David Feuerstein
Attorneys for Plaintiff,
  Joan Child Dangerfield
Two Park Avenue
New York, New York 10016
(212) 592-1400

11

Exhibit A

AGREEMENT made and dated this 5th day of June, 1975, by and between RODNEY DANGERFIELD, also known as JACK ROY, residing at 500 East 77th Street, Borough of Manhattan, City and State of New York, herein called FIRST PARTY, ANTHONY BEVACQUA, residing at 67-66 108th Street, Forest Hills, New York, herein called SECOND PARTY, and RODNEY DANGERFIELD, INC., a New York Corporation having its principal place of business at 1118 First Avenue, Borough of Manhattan, City and State of New York, herein called CORPORATION.

### W I T N E S S E T H :

WHEREAS, the Corporation is a corporation organized and existing under and by virtue of the laws of the State of New York, and owns and operates a restaurant and cabaret at premises 1118 First Avenue, Borough of Manhattan, City and State of New York, and

WHEREAS, said Corporation is authorized to issue 200 shares of common stock, without par value, and

WHEREAS, 100 shares of said common stock are presently issued to each; the first party owns 75 shares and the second party owns 25 shares, and

WHEREAS, the first party desires to sell 50 shares of stock of the corporation to the second party, and the second party is desirous of purchasing the same, and

WHEREAS, the parties have made agreements with respect to the transfer and sale of said 50 shares of stock of the corporation, which they desire to reduce to writing.

NOW, THEREFORE, the parties do hereby agree as follows:

FIRST: The first party does hereby agree to sell, and the second party does hereby agree to purchase from the first party 50 shares of common stock of the corporation, for the sum of $25,000

payable upon the assignment and delivery of said 50 shares of stock. Said shares of stock shall be duly assigned and transferred by the first party to the second party, simultaneously with the execution of this agreement and the said sum of $25,000.00 shall be paid by the second party to the first party simultaneously therewith.

SECOND: It is hereby agreed between the parties that while the assignment of said 50 shares of stock is being made simultaneously herewith, adjustments of any and all dividends on stock shall be made as of the 30th day of June, 1975. Namely, any and all dividends declared or profits of the corporation distributed as of June 30, 1975, shall be distributed 75% to the first party and 25% to the second party. Conversely, any liabilities of the corporation up to and including June 30, 1975, shall be shares 75% by the first party and 25% by the second party, in the event that any contribution is required to be made by the parties to the corporation to pay such liabilities as of June 30, 1975.

THIRD: After consummation of this transaction, the first party shall be the owner of 25 shares of the corporation and the second party shall be the owner of 75 shares of the corporation, subject however, to the stipulations and agreements hereinabove and hereinafter set forth.

FOURTH: It is hereby further agreed that should the business of the corporation be sold after July 1, 1975, whether by stock sale or asset sale, that irrespective of the percentage of stock holdings, the proceeds of said sale shall be divided as follows, to wit:

a. If after payment of all obligations of the corporation, the net proceeds of sale are in excess of $100,000.00, then the first $100,000.00 shall be divided as follows: 25% to the first party, and 75% to the second party. Any excess shall be divided 50% to each individual party hereto.

b. In the event that the net proceeds after payment of such obligations are $100,000.00 or less, then such proceeds

shall be divided 25% to the first party and 75% to the second party.

FIFTH: It is hereby further agreed that the first party shall not be required to devote any specific time to the business of the corporation or to render services as an entertainer. In the event that the first party shall render services as entertainer for the corporation, he shall receive compensation therefor on the same basis as heretofore paid to him.

SIXTH: It is further agreed that the second party henceforth may directly or indirectly become engaged in any other business of any kind or nature, including but not limited to the restaurant or cabaret business and may render services in connection with such other business and/or be an officer, stockholder, director or employee thereof, any agreements between the parties to the contrary heretofore entered into, notwithstanding.

SEVENTH: Except as herein modified, any and all agreements heretofore entered into between the parties shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals, the day and year first above written.

Rodney Dangerfield

Anthony Bevacqua

RODNEY DANGERFIELD, INC.

By